1

2

3

4

5

6

7

8

9                    UNITED STATES DISTRICT COURT

10                  SOUTHERN DISTRICT OF CALIFORNIA

11

ALFRED ARRENDELL,                 )  Civil No. 10cv02186 BEN (RBB)
12                                )
              Plaintiff,          )  **REPORT AND RECOMMENDATION**
13                                )  **GRANTING IN PART AND DENYING**
v.                                )  **IN PART DEFENDANTS STATE OF**
14                                )  **CALIFORNIA, CALIFORNIA**
STATE OF CALIFORNIA,              )  **DEPARTMENT OF CORRECTIONS AND**
15 CALIFORNIA DEPARTMENT OF       )  **REHABILITATION, D. URIBE, A.**
   CORRECTIONS AND REHABILITATION,)  **DIN, AND S. PEREZ'S MOTION TO**
16 WARDEN DOMINGO URIBE, JR.,     )  **DISMISS [ECF NO. 3]**
   OFFICER DIN, OFFICER PEREZ, and )
17 DOES 1-10,                     )
                                  )
18              Defendants.       )
   _____)
19

20      Plaintiff Alfred Arrendell filed a Complaint on October 20,

21 2010, pursuant to 42 U.S.C. § 1983 [ECF No. 1].  The events giving

22 rise to this suit occurred while Arrendell was incarcerated at

23 Centinela State Prison ("Centinela"), located in Imperial County,

24 California.  (Compl. 5, ECF No. 1.)  Plaintiff contends that the

25 Defendants, prison officials, violated his Fourth, Eighth, and

26 Fourteenth Amendment rights as well as his rights protected by the

27 California Constitution when Defendants allowed three unauthorized

28 inmates to enter Plaintiff's assigned prison yard.  (<u>Id.</u> at 1, 6.)

Arrendell alleges these prisoners engaged in an altercation among themselves and that the Defendants' response was excessive. (Id. at 7-9.)  In an attempt to break up the altercation, several correctional officers discharged smoke bombs. (Id. at 7.)  The fight among three inmates continued, and Defendant Din "instructed officers in the tower to shoot at the inmates." (Id.)  The Plaintiff maintains that he suffered an assault, battery, severe injury, and delayed medical treatment after being shot in the eye. (Id. at 5.)

On February 23, 2011, Defendants State of California, California Department of Corrections and Rehabilitation, D. Uribe, A. Din, and S. Perez's Motion to Dismiss was filed, along with a Memorandum of Points and Authorities [ECF No. 3]. Defendants State of California and California Department of Corrections and Rehabilitation ("CDCR") argue that they are entitled to Eleventh Amendment immunity. (Mot. Dismiss Attach. #1 Mem. P. & A. 2-3, ECF No. 3.)  Defendant Uribe alleges he is immune from a lawsuit seeking damages against him in his official capacity. (Id. at 3.) Finally, all Defendants contend Plaintiff has failed to state a claim under the Fourth and Fourteenth Amendments because the allegations are impermissibly duplicative of Arrendell's Eighth Amendment claim. (Id. at 4-5.)

Plaintiff's Opposition to Defendants' Motion to Dismiss was filed on March 11, 2011 [ECF No. 5]. There, Arrendell agrees that Defendants State of California and CDCR should be dismissed from the lawsuit and that his Fourth Amendment claims against all Defendants should be dismissed as duplicative of his Eighth Amendment claim. (Opp'n 3, ECF No. 5.)  Plaintiff disputes,

however, that Defendant Uribe is immune from damages and that Arrendell fails to state a claim under the Fourteenth Amendment. (Id. at 2-3.)

Defendants' Reply Points and Authorities in Support of Motion to Dismiss was filed on March 21, 2011 [ECF No. 6]. In light of Plaintiff's acknowledgment that the reference in his Complaint to the Fourteenth Amendment is not to attempt to allege distinct claims, Defendants withdraw their Motion to Dismiss Plaintiff's Fourteenth Amendment claims, but they maintain that Warden Uribe is immune from damages because the Complaint names him in his official capacity. (Reply 2-4, ECF No. 6.)

The Court has reviewed the Complaint, Defendants' Motion to Dismiss and Attachment, Plaintiff's Opposition to Defendants' Motion to Dismiss, and Defendants' Reply Points and Authorities. For the reasons stated below, the district court should **GRANT** in part and **DENY** in part Defendants' Motion to Dismiss.

## I.  FACTUAL BACKGROUND

In his Complaint, Arrendell asserts that on February 9, 2010, while housed in yard one of C yard, building one, he was injured during the prison officials' response to an inmate altercation. (Compl. 5, ECF No. 1.) Plaintiff alleges that three inmates, Martinez, Bivens, and Rios, were improperly allowed to enter his prison yard from yard two. (Id. at 6.) Arrendell contends that Centinela separates the prison population into different yards based on a list of nonexhaustive factors, such as "administrative findings, prison population, known gang affiliation, gravity of sentenced offense, inmate demographics, and concerns for safety." (Id. at 5.) According to the Plaintiff, C yard is divided into

yards one and two by barbed wire fencing, and Centinela officials do not permit inmates to pass between the prison yards. (Id. at 6.) Inmate Bivens was housed in C yard, building two, and inmates Rios and Martinez were housed in C yard, building five. (Id. at 5-6.)

The Plaintiff alleges that all inmates are required to pass through security, including metal detectors, prior to entering and exiting the yard. (Id. at 6.) Inmates Bivens, Rios, and Martinez, however, were able to carry inmate-manufactured weapons into yard one from yard two. (Id. at 6.) Arrendell states that upon entering yard one, these three inmates began to fight among themselves. (Id. at 7.) At the time the altercation broke out, Plaintiff argues that he was located between fifty to one hundred feet away from the fighting. (Id. at 7.)

Correctional officers intervened after several minutes by deploying five or six smoke bombs. (Id.) According to Plaintiff, the smoke bombs failed to stop the altercation, and numerous correctional officers attempted to use batons to subdue the fighting. (Id.) Defendant Din, however, ordered the officers to refrain from using their batons and instructed the officers located in the tower to shoot at the prisoners. (Id.) Next, Plaintiff alleges that an alarm was sounded, and a command was given for the inmates to get down. (Id.) During the brawl, Defendant Officer Perez was positioned in the main tower approximately thirty feet from the fighting inmates. (Id. at 8.) Arrendell obeyed the order to get down and huddled alongside other inmates underneath a picnic table approximately fifty to eighty feet from the altercation and 100 to 120 feet from the tower. (Id.)

4

The Plaintiff contends that Defendant Perez initially fired four to five rounds from her wooden block gun, one of which struck the fighting prisoners. (<u>Id.</u>)  Officer Perez then switched to a miniature rifle and discharged approximately three rounds at the crowd of prisoners huddled under the picnic tables. (<u>Id.</u>) Arrendell submits that although he was an innocent bystander, Perez chose to shoot in the direction of the innocent inmates instead of toward the fighting prisoners. (<u>Id.</u> at 8-9.)  One of these rounds struck Arrendell in his eye, leaving him permanently blind in his left eye. (<u>Id.</u> at 9-10.)

Despite his persistent requests for assistance, Plaintiff claims that prison officials failed to come to his aid until "several moments" later. (<u>Id.</u> at 9.)  Arrendell believes he was ultimately transported to a medical facility by ambulance because the Centinela-issued helicopter was "inoperable." (<u>Id.</u>)  Plaintiff insists this slower mode of transportation unnecessarily delayed his medical care, which resulted in permanent blindness in the injured eye. (<u>Id.</u> at 9-10.)

In count one, Arrendell argues that Correctional Officer Din and Correctional Officer Perez violated Plaintiff's Eighth and Fourth Amendment rights when they subjected Plaintiff to cruel and unusual punishment and the excessive use of force. (<u>Id.</u> at 12.) Specifically, Arrendell maintains that the officers assaulted, battered, and summarily punished Plaintiff when responding to the inmate altercation that caused Plaintiff to be shot in the eye. (<u>Id.</u> at 12-15.)  Arrendell further contends that Defendants State of California and Warden Uribe ratified and condoned the officers' conduct. (<u>Id.</u> at 14.)

Plaintiff claims in count two that all of the Defendants violated his Fourth, Eighth, and Fourteenth Amendment rights by failing to prevent harm to Arrendell by acting with deliberate indifference to Plaintiff's health and safety, and by denying Arrendell due process. (Id. at 15.) Arrendell submits that Defendants used force in a manner inconsistent with established Centinela and CDCR guidelines. (Id. at 16-17.) Also, he argues that the Defendants breached a duty of care owed to Plaintiff when they allowed inmates Martinez, Rios, and Bivens to enter yard one. (Id. at 17.) Plaintiff further claims that Defendants' failure to maintain the security and "proper segregation of inmates" caused his injuries. (Id.)

Next, in count three, Plaintiff asserts Defendants Din and Perez violated his Eighth Amendment rights when they failed to prevent further harm to him and acted with deliberate indifference to his medical needs. (Id. at 19.) Arrendell contends that he was not engaged in any conduct that would warrant a delayed medical response, but the officers failed to immediately procure medical aid for him after he was shot. (Id. at 20-21.)

Counts four and five are alleged against Defendant State of California for "Unconstitutional Customs, Practices and Policies," as well as for supervisory liability. (Id. at 22, 26.) In count four, Arrendell asserts that Defendant engaged in a broad policy of discrimination against African-American inmates and failed to enforce CDCR and Centinela guidelines for civil rights infractions. (See id. at 23.) Plaintiff bases his fifth cause of action for supervisory liability on the State's failure to adequately train, supervise, discipline, or control the prison guards who responded

6

1   to the inmate altercation.  (See id. at 26-29.)  Arrendell

2   maintains that the State should be held liable for condoning the

3   correctional officers' conduct through its deficient oversight of

4   Perez, Din, and Uribe, which resulted in Plaintiff's injuries.

5   (Id. at 29.)

6        In count six, Arrendell pleads a claim for supervisory

7   liability against Warden Uribe for the correctional officers'

8   actions.  (Id. at 29-30.)  Warden Uribe breached a duty to train,

9   supervise, discipline, and control the Defendants.  (Id. at 31.)

10  Plaintiff states that Uribe, was "chief policy maker" at Centinela

11  and could have taken preventative action.  (Id.)  Arrendell

12  maintains that the warden had knowledge of the correctional

13  officers' unconstitutional conduct but failed to take any

14  corrective action.  (Id. at 31-32.)  Defendant Uribe knew that his

15  subordinate officers engaged in the practice of unlawfully when

16  targeting minority inmates, which Arrendell claims produced an

17  "atmosphere of lawlessness" at Centinela and led to Defendants'

18  inadequate security measures, excessive use of force, and

19  indifference toward institution guidelines.  (Id. at 30, 32.)

20  Plaintiff's seventh cause of action advances similar supervisory

21  liability allegations against some of the Doe defendants.  (Id. at

22  33-37.)[1]

23       Plaintiff's remaining claims concern supplemental causes of

24  action arising under the California Constitution alleging that

25  Defendants violated the Bane Act, and they are liable for battery,

26

27       [1]  Plaintiff's seventh cause of action is also labeled his
     sixth cause of action, which the Court construes as a typographical
     error.  (See id. at 33.)  The Court will cite to Arrendell's
28   supervisory liability allegation against "Defendant Does 6-10" as
     constituting his seventh cause of action.  (See id.)

negligent infliction of emotional distress, and intentional

infliction of emotional distress.  (Id. at 37, 40, 42, 44.)

Arrendell recites his earlier factual and legal allegations in the

state civil rights context.  (Id.)

## II.   LEGAL STANDARDS APPLICABLE TO MOTIONS TO DISMISS

## A.   Motions to Dismiss for Failure to State a Claim

A motion to dismiss for failure to state a claim pursuant to

Federal Rule of Civil Procedure 12(b)(6) tests the legal

sufficiency of the claims in the complaint.  See Davis v. Monroe

County Bd. of Educ., 526 U.S. 629, 633 (1999).  "The old formula --

that the complaint must not be dismissed unless it is beyond doubt

without merit -- was discarded by the Bell Atlantic decision [Bell

Atl. Corp. v. Twombly, 550 U.S. 544, 563 n.8 (2007)]."  Limestone

Dev. Corp. v. Vill. of Lemont, 520 F.3d 797, 803 (7th Cir. 2008).

A complaint must be dismissed if it does not contain "enough

facts to state a claim to relief that is plausible on its face."

Bell Atl. Corp., 550 U.S. at 570.  "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the

misconduct alleged."  Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct.

1937, 1949 (2009).  The court must accept as true all material

allegations in the complaint, as well as reasonable inferences to

be drawn from them, and must construe the complaint in the light

most favorable to the plaintiff.  Cholla Ready Mix, Inc. v. Civish,

382 F.3d 969, 973 (9th Cir. 2004) (citing Karam v. City of Burbank,

352 F.3d 1188, 1192 (9th Cir. 2003)); Parks Sch. of Bus., Inc. v.

Symington, 51 F.3d 1480, 1484 (9th Cir. 1995); N.L. Indus., Inc. v.

Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).

8

The court does not look at whether the plaintiff will "ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see Bell Atl. Corp. v. Twombly, 550 U.S. at 563 n.8. A dismissal under Rule 12(b)(6) is generally proper only where there "is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001) (citing Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)).

The court need not accept conclusory allegations in the complaint as true; rather, it must "examine whether [they] follow from the description of facts as alleged by the plaintiff." Holden v. Hagopian, 978 F.2d 1115, 1121 (9th Cir. 1992) (citation omitted); see Halkin v. VeriFone, Inc., 11 F.3d 865, 868 (9th Cir. 1993); see also Cholla Ready Mix, Inc., 382 F.3d at 973 (quoting Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994)) (stating that on a Rule 12(b)(6) motion, a court "is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged[]"). "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).

In addition, when resolving a motion to dismiss for failure to state a claim, courts may not generally consider materials outside of the pleadings. Schneider v. Cal. Dep't of Corrs., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998); Jacobellis v. State Farm Fire & Cas. Co., 120 F.3d 171, 172 (9th Cir. 1997); Allarcom Pay

Television Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995).  "The focus of any Rule 12(b)(6) dismissal . . . is the complaint."  Schneider, 151 F.3d at 1197 n.1.  This precludes consideration of "new" allegations that may be raised in a plaintiff's opposition to a motion to dismiss brought pursuant to Rule 12(b)(6).  Id. (citing Harrell v. United States, 13 F.3d 232, 236 (7th Cir. 1993)).

These Rule 12 (b)(6) guidelines apply to Defendants' Motion to Dismiss.

**B.  Stating a Claim Under 42 U.S.C. § 1983**

To state a claim under § 1983, the plaintiff must allege facts sufficient to show (1) a person acting "under color of state law" committed the conduct at issue, and (2) the conduct deprived the plaintiff of some right, privilege, or immunity protected by the Constitution or laws of the United States.  42 U.S.C.A. § 1983 (West 2003); Shah v. County of Los Angeles, 797 F.2d 743, 746 (9th Cir. 1986).

### III.  DEFENDANTS' MOTION TO DISMISS

**A.  Fourteenth Amendment**

All Defendants move to dismiss the second, fifth, and sixth causes of action alleging they denied Plaintiff due process under the Fourteenth Amendment.  (Mot. Dismiss Attach. #1 Mem. P. & A. 4, ECF No. 3.)  Defendants argue that Arrendell's substantive due process claim is duplicative of his Eighth Amendment claim and must be dismissed.  (Id.)  Plaintiff states in his Opposition, however, that he only includes a Fourteenth Amendment challenge in order to apply "the Eighth Amendment's prohibition against cruel and unusual punishment" to the State of California.  (Opp'n 3, ECF No. 5.)  To

this extent, Defendants indicate that they withdraw their Motion to Dismiss Plaintiff's claims under the Fourteenth Amendment. (Reply 2, ECF No. 6.)

Generally, a plaintiff may not advance a substantive due process claim if "a particular Amendment 'provides an explicit textual source of constitutional protection'" against government misconduct. Albright v. Oliver, 510 U.S. 266, 273 (1994) (Rehnquist, C.J., for plurality) (quoting Graham v. Connor, 490 U.S. 386, 395, (1989)). Courts may limit the inquiry to the amendment that more specifically addresses a plaintiff's claim in lieu of general notions of substantive due process. See id., at 286 (Kennedy & Thomas, JJ., concurring) (refraining from evaluating petitioner's due process claim under § 1983 because his allegations could be addressed under the state's malicious prosecution law); Graham, 490 U.S. at 395 n.10 ("Any protection that 'substantive due process' affords convicted prisoners against excessive force is, we have held, at best redundant of that provided by the Eighth Amendment.") (citing Whitley v. Albers, 475 U.S. 312, 327 (1986)).

Here, for the Defendants' same conduct, Arrendell alleges violations of the Eighth Amendment in addition to his claim for denial of due process under the Fourteenth Amendment. Because the Eighth Amendment provides an explicit source of protection from the type of conduct Plaintiff alleges, these claims are preempted by the Eighth Amendment and should not be analyzed as a substantive due process claim under the Fourteenth Amendment. See Wolff v. Hood, 242 F. Supp. 2d 811, 819 (D. Or. 2002) (finding that plaintiff could not state a substantive due process claim for prison officials' failure to protect him from violence by other

11

1   inmates because the Eighth Amendment provides explicit

2   constitutional protection).

3       The parties agree that the Court should construe Plaintiff's

4   Fourteenth Amendment challenges only to the extent that they seek

5   to apply the Eighth Amendment to the State. (Opp'n 3, ECF No. 5;

6   Reply 2, ECF No. 6.) Accordingly, Defendants' Motion to Dismiss

7   Plaintiff's second, fifth, and sixth causes of action under the

8   Fourteenth Amendment should be **DENIED**.

9   **B.   Fourth Amendment**

10      All Defendants move to dismiss Arrendell's Fourth Amendment

11  claims alleging excessive force and deliberate indifference in

12  counts one, two, four, five, and six. (Mot. Dismiss Attach. #1

13  Mem. P. & A. 4-5, ECF No. 3.) In his Opposition, Plaintiff

14  concedes that "all Fourth Amendment claims for excessive force and

15  deliberate indifference should be dismissed as duplicative" of his

16  Eighth Amendment challenge. (Opp'n 3, ECF No. 5.)

17      A plaintiff must base a claim for relief on a specific

18  amendment if a certain amendment "provides an explicit textual

19  source of constitutional protection." Graham, 490 U.S. at 395.

20  "[A] convicted prisoner is protected from excessive force by the

21  Eighth Amendment and a citizen being arrested or investigated is

22  protected from excessive force by the Fourth Amendment." P.B. v.

23  Koch, 96 F.3d 1298, 1303 (9th Cir. 1996) (quoting Graham, 490 U.S.

24  at 394); see also Clement v. Gomez, 298 F.3d 898, 903 (9th Cir.

25  2002).

26      Arrendell was a convicted prisoner at the time of the

27  Defendants' alleged excessive force and deliberate indifference.

28  (Compl. 5, ECF No. 1.) Both parties agree that the Eighth

1   Amendment is the only proper avenue for redress of these claims.

2   (Opp'n 3, ECF No. 5; Reply 2, ECF No. 6.)  Accordingly, Plaintiff's

3   Fourth Amendment claims for excessive force and deliberate

4   difference in counts one, two, four, five, and six should be

5   **DISMISSED** with prejudice.

6   **C.   Eleventh Amendment Immunity**

7       **1.   Defendants State of California and CDCR**

8       The Eleventh Amendment grants the states immunity from private

9   civil suits.  U.S. Const. amend. XI; <u>Seven Up Pete Venture v.</u>

10  <u>Schweitzer</u>, 523 F.3d 948, 952 (9th Cir. 2008); <u>Henry v. County of</u>

11  <u>Shasta</u>, 132 F.3d 512, 517 (9th Cir. 1997), <u>as</u> <u>amended</u>, 137 F.3d

12  1372 (9th Cir. 1998).  A state has immunity from "suits brought in

13  federal courts by her own citizens as well as by citizens of

14  another State." <u>Pittman v. Oregon</u>, 509 F.3d 1065, 1071 (9th Cir.

15  2007) (quoting <u>Edelman v. Jordan</u>, 415 U.S. 651, 662-63 (1974)).

16  Eleventh Amendment immunity also extends to agencies and

17  departments of the state.  <u>Pennhurst State Sch. & Hosp. v.</u>

18  <u>Halderman</u>, 465 U.S. 89, 100 (1984) ("In the absence of consent a

19  suit in which the State or one of its agencies or departments is

20  named as the defendant is proscribed by the Eleventh Amendment.");

21  <u>Brown v. Cal. Dep't of Corr.</u>, 554 F.3d 747, 752 (9th Cir. 2009).

22  This immunity applies to civil rights claims brought under § 1983;

23  thus, an inmate cannot recover damages from the state unless the

24  state waives its immunity.  <u>Will v. Mich. Dep't of State Police</u>,

25  491 U.S. 58, 66 (1989); <u>Barber v. Hawaii</u>, 42 F.3d 1185, 1198 (9th

26  Cir. 1994).

27      Here, Defendants State of California and CDCR assert all of

28  Arrendell's claims against them are barred by the Eleventh

Amendment.  (Mot. Dismiss Attach. #1 Mem P. & A. 2, ECF No. 3.)
These Defendants note that CDCR is a branch of the State of
California, and both Defendants are absolutely immune from
liability.  (Id. at 2-3.)  Arrendell concedes that these Defendants
should be dismissed from this lawsuit.  (Opp'n 3, ECF No. 5.)
Accordingly, the Motion to Dismiss Plaintiff's claims against
Defendant State of California in counts two, four, five, ten, and
eleven, and his claims against Defendant CDCR in counts two, ten,
and eleven should be **GRANTED** with prejudice.

> **2.  Defendant Uribe**

Eleventh Amendment immunity also extends to state officials
sued in federal court in their official capacities.  Will, 491 U.S.
at 71 ("[A] suit against a state official in his or her official
capacity is not a suit against the official but rather is a suit
against the official's office."); Seven Up Pete Venture, 523 F.3d
at 952-53.  A state official sued in his official capacity is not a
"person" within the meaning of § 1983.  See Will, 491 U.S. at 71.

But, a state officer is not entitled to Eleventh Amendment
immunity, when the officer is sued in his individual capacity only.
Hafer v. Melo, 502 U.S. 21, 31 (1991); Romano v. Bible, 169 F.3d
1182, 1185 (9th Cir. 1999); see Smith v. Kitzhaber, No. CV-00-326-
ST, 2000 U.S. Dist. LEXIS 6998, at *6-7 (D. Or. Mar. 20, 2000);
AIDS Healthcare Found. V. Belshe, No. CV97-3235LBG(MCx), 1998 U.S.
Dist. LEXIS 21367, at *31 (C.D. Cal. Dec. 8, 1998).  "[S]tate
officials, sued in their individual capacities, are 'persons'
within the meaning of § 1983.  The Eleventh Amendment does not bar
such suits, nor are state officers absolutely immune from personal

14

1   liability under § 1983 solely by virtue of the 'official' nature of

2   their acts." <u>Hafer</u>, 502 U.S. at 31.

3        The parties dispute whether the Eleventh Amendment bars

4   Plaintiff's sixth cause of action for damages against Warden Uribe.

5   In his Motion to Dismiss, Defendant Uribe asserts that because he

6   is sued in his official capacity as warden of Centinela, he is

7   immune from damages under the Eleventh Amendment. (Mot. Dismiss

8   Attach. #1 Mem. P. & A. 3, ECF No. 3.)  Warden Uribe cites to

9   allegations in the Complaint to contend that Arrendell is suing him

10  in his official capacity as warden. (<u>Id.</u>)  The Defendant relies on

11  the fact that Plaintiff describes Uribe as "at all relevant times"

12  being the "Warden and "chief policy maker" of Centinela. (<u>Id.</u>)  The

13  warden submits that Plaintiff's statement that Defendant became

14  aware of the alleged unconstitutional conduct through "his

15  supervisory position" further evidences that he is sued in his

16  official capacity. (<u>Id.</u>)  Because the Complaint seeks only damages

17  against him and no injunctive relief, Uribe asserts he should be

18  dismissed from the lawsuit. (<u>Id.</u>)

19       In response, Plaintiff insists that his Complaint properly

20  alleges claims against Defendant Uribe in his individual capacity.

21  (Opp'n 2-3, ECF No. 5.)  Arrendell attempts to clarify his position

22  by maintaining that his sixth cause of action implicates Uribe's

23  deliberate indifference toward constitutionally deficient

24  practices. (<u>Id.</u>)  He cites <u>Hansen v. Black</u>, 885 F.2d 642 (9th Cir.

25  1989), and <u>York v. San Pablo</u>, 626 F. Supp. 34 (N.D. Cal. 1985), to

26  argue that a claim for supervisory liability is cognizable under §

27  1983. (Opp'n 2, ECF No. 5.)  Although Plaintiff generally states

28  that Defendant is not immune from damages, he only explicitly

opposes Uribe's Motion to Dismiss as it applies to count six.  (<u>Id.</u> at 2-3); <u>see also</u> S.D. Cal. Civ. R. 7.1 (f)(3)(c) (stating that the failure to oppose a motion may constitute consent to it).

In the Reply, Defendant stresses that the Court need only look to the capacity of the actor being sued rather than the actions complained of, and suggests that pleading a claim for supervisory liability does not equate to suing Warden Uribe in his individual capacity.  (Reply 3, ECF No. 6.)  Uribe concedes the Complaint "does not state whether Warden Uribe is sued in his individual or official capacity."  (<u>Id.</u>)  He reiterates, however, that Arrendell alleges Uribe was "at all relevant times herein the Warden of CSP, . . . possessed the power and authority and [was] charged by law with the responsibility to enact policies and to prescribe practices concerning the operation of CSP."  (Reply 3, ECF No. 6.)  This, he contends, describes Uribe as an "agent of the state" and demonstrates Plaintiff's Complaint sues him in his official capacity.  (Reply 3-4, ECF No. 6.)  Thus, Arrendell's allegations against Warden Uribe may survive this Motion to Dismiss only if the Complaint names Uribe in his individual capacity.  (<u>See id.</u> at 3.)

Courts have made clear that the distinction between an individual and official capacity suit is not "a mere pleading device."  <u>Will</u>, 491 U.S. at 71.  To determine whether the plaintiff's complaint sues the defendant in his individual or official capacity, the court must examine the "capacity in which the state officer is <u>sued</u>, not the capacity in which the officer inflicts the alleged injury."  <u>Hafer</u>, 502 U.S. at 26 (emphasis added); <u>Romano</u>, 169 F.3d at 1185; <u>Ashker v. Cal. Dep't of Corr.</u>, 112 F.3d 392, 395 (9th Cir. 1997).  State officers are not entitled

1 to immunity simply because a plaintiff alleges they injured him

2 while acting in their official capacities as employees of the

3 state.  Hafer, 502 U.S. at 26-27.

                    **a.  The Face of the Complaint**

5        When the Complaint fails to specify the capacity of an

6 official actor being sued, the court looks beyond the caption to

7 the "basis of the claims asserted and the nature of the relief

8 sought."  Price v. Akaka, 928 F.2d 824, 828 (9th Cir. 1990)

9 (quoting Central Reserve Life Ins. Co. v. Struve, 852 F.2d 1158,

10 1161 (9th Cir. 1988)); see also Shoshone-Bannock Tribes v. Fish &

11 Game Comm'n, 42 F.3d 1278, 1284 (9th Cir. 1994).  Although "[i]t is

12 obviously preferable for the plaintiff to be specific in the first

13 instance to avoid any ambiguity," courts in the Ninth Circuit

14 presume that plaintiffs bring damage actions against named state

15 officials in their individual capacities.  Hafer, 502 U.S. at 24

16 n.*; Romano, 169 F.3d at 1186; Shoshone-Bannock Tribes, 42 F.3d at

17 1284.  "Any other construction would be illogical . . . , since a

18 claim for damages against state officials in their official

19 capacities is plainly barred."  Shoshone-Bannock Tribes, 42 F.3d at

20 1284; see also Price, 928 F.2d at 828 (finding plaintiff stated a

21 claim against defendants in their individual capacities because he

22 sought monetary damages under § 1983).

23        Even if a plaintiff seeks damages, the presumption in favor of

24 an individual capacity suit will not apply if there is a

25 discrepancy between the caption and the body of the complaint that

26 could deceive the defendants in preparing their defense.

27 Shoshone-Bannock Tribes, 42 F.3d at 1285 ("[W]here the plaintiff

28 fails to specify in the body of the complaint the capacity in which

                              17

1  suit is brought against the defendants, we hold that what is, and

2  is not, expressly stated in the caption controls.").

3      Here, when read together, the caption and the body of

4  Arrendell's Complaint are ambiguous as to the capacity in which

5  Defendant Uribe is sued.  But despite the lack of clarity, the

6  Complaint should benefit from the presumption that Plaintiff is

7  suing Warden Uribe in his individual capacity.  See Romano, 169

8  F.3d at 1186; Shonshone-Bannock Tribes, 42 F.3d at 1284.  The

9  caption does not specifically state the capacity in which any

10 Defendant is sued.  (Compl. 1, ECF No. 1.)  In the body of the

11 Complaint, however, Arrendell expressly sues the Doe defendants

12 "individually and in his/her official capacity," but omits this

13 detail with respect to any of the named Defendants.  (Id. at 1, 3-

14 4, 29.)  Plaintiff's claim, which centers on the "atmosphere of

15 lawlessness" created by Warden Uribe's policies, attacks Uribe's

16 execution of his official duties.  (Id. at 3, 30.)  Notably,

17 however, Arrendell articulates in count six that Defendant Uribe

18 "is personally liable for damages."  (Id. at 33.)  To construe the

19 Complaint as Defendant Uribe urges this Court to do would ignore

20 the basis for Arrendell's asserted claim and relief requested.  See

21 Will, 491 U.S. at 71 (recognizing the distinction between an

22 individual and official capacity suit is not merely a pleading

23 device).  Also, the presumption in favor of individual capacity

24 applies when the caption is not misleading and specifically lists

25 the official as a named defendant.  Romano, 169 F.3d at 1186;

26 Shoshone-Bannock Tribes, 42 F.3d at 1284-85.

27 //

28 //

10cv02186 BEN(RBB)

**b.  Claims Asserted and Relief Requested**

The substantive allegations Arrendell makes against Warden Uribe further indicate Uribe is sued in his individual capacity. Courts consider the "basis of the claims asserted and the nature of the relief sought" when determining capacity.  <u>Price</u>, 928 F.2d at 828.  Arrendell seeks damages from each Defendant, which suggests a personal capacity suit.  <u>See</u> <u>Shoshone-Bannock Tribes</u>, 42 F.3d at 1284; <u>Price</u>, 928 F.2d at 828; (Compl. 46, ECF No. 1.)  The thrust of Defendant's argument is that because Arrendell repeatedly describes Uribe as the warden of Centinela, Uribe is sued in his official capacity only.  (Reply 3, ECF No. 6.)  As Plaintiff fails to specify Uribe's capacity and describes him as occupying an official post, the Defendant asserts that he is impermissibly sued in his official capacity. (<u>Id.</u>)

Defendant Uribe's argument that Eleventh Amendment immunity bars a supervisory liability claim is unpersuasive.  Section 1983 of the Civil Rights Act does not authorize a plaintiff to bring a cause of action based on respondeat superior liability.  <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 692 (1978) ("[T]he fact that Congress did specifically provide that A's tort became B's liability if B 'caused' A to subject another to a tort suggests that Congress did not intend § 1983 liability to attach where such causation was absent."); <u>see also</u> <u>Motley v. Parks</u>, 432 F.3d 1072, 1081 (9th Cir. 2005).  Nevertheless, state officials are subject to suit in their personal capacity if "they play an affirmative part in the alleged deprivation of constitutional rights."  <u>King v. Atiyeh</u>, 814 F.2d 565, 568 (9th Cir. 1987).  Consequently, a cause of action for supervisory liability requires a plaintiff to allege

19

"a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation," or that "the supervisor participated in or directed the violations, or knew of the violations [of subordinates] and failed to act to prevent them." Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1182 (9th Cir. 2007); Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989).

Stating a supervisory liability claim under § 1983 will typically involve alleging conduct by the defendant pursuant to his authority as an official. See Preschooler II, 479 F.3d at 1182; see, e.g., Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) ("Supervisory liability exists . . . if supervisory officials implement a policy so deficient that the policy 'itself is a repudiation of constitutional rights.'"). But it does not follow that a suit against an individual as a supervisor is necessarily indicative of an official capacity suit. See Starr v. Baca, 633 F.3d 1191, 1197 (9th Cir. 2011) (stating that a supervisor may be found liable in his individual capacity); Romano, 169 F.3d at 1186 ("We also have presumed that officials necessarily are sued in their personal capacities where those officials are named in a complaint."); Redman, 942 F.2d at 1447 ("[Supervisory] liability is not a form of vicarious liability. Rather, it is direct liability."). An official's personal involvement in the alleged constitutional deprivation is the touchstone of individual liability under § 1983. See Preschooler II, 479 F.3d at 1182; Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

Arrendell's sixth cause of action alleges that Uribe had knowledge of his subordinate officers' unconstitutional conduct and

20

that he failed to act in the face of this knowledge. (Compl. 31-32, ECF No. 1.) Because Plaintiff seeks damages and claims that Uribe was personally involved in the violation of Arrendell's constitutional rights, Plaintiff alleges supervisory liability against Warden Uribe in his personal capacity. The Defendant has not questioned the legal or factual basis of the Plaintiff's claim for supervisory liability; consequently, the Court only addresses the arguments raised by the Defendant. The district court should **DENY** Defendant Uribe's Motion to Dismiss Plaintiff's sixth cause of action against him for damages.

### IV.   CONCLUSION

Defendants' Motion to Dismiss Plaintiff's second, fifth, and sixth causes of action under the Fourteenth Amendment should be **DENIED**. Plaintiff may only assert these allegations to apply the Eighth Amendment to the State of California. Plaintiff's Fourth Amendment claims for excessive force and deliberate indifference alleged in counts one, two, four, five, and six should be **DISMISSED** with prejudice because they are subsumed by the Eighth Amendment. Defendants State of California and CDCR are immune from suit under the Eleventh Amendment. For this reason, the Motion to Dismiss the State of California in counts two, four, five, nine, ten, and eleven should be **GRANTED** with prejudice. Likewise, the Motion to Dismiss Defendant CDCR in counts two, ten, and eleven should be **GRANTED** with prejudice. Finally, Defendant Warden Uribe's Motion to Dismiss Plaintiff's monetary claims against him in count six should be **DENIED**. All other claims for monetary damages against Uribe, however, should be **DISMISSED**.

1    Finally, the district court should also dismiss the Doe

2    defendants from the Complaint.[2]

3    This Report and Recommendation will be submitted to the United

4    States District Court judge assigned to this case, pursuant to the

5    provisions of 28 U.S.C. § 636(b)(1).  Any party may file written

6    objections with the Court and serve a copy on all parties on or

7    before July 18, 2011.  The document should be captioned "Objections

8    to Report and Recommendation."  Any reply to the objections shall

9    be served and filed on or before July 29, 2011.  The parties are

10   advised that failure to file objections within the specified time

11   may waive the right to appeal the district court's order.  Martinez

12   v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

13

14   Dated: June 28, 2011

15                                         Ruben B. Brooks
                                           United States Magistrate Judge

16   cc:  Judge Benitez
         All Parties of Record

17

18

19

20

21

22

23

24

25

26

27   [2] The federal rules of civil procedure do not provide for the
     use of fictitious defendants.  Graziose v. American Home Products
     Corp., 202 F.R.D. 638, 643 (D. Nev. 2001).  If Arrendell learns of
28   the participation of other individuals and their identities, he may
     move to amend the Complaint.  Id.

                                    22                        10cv02186 BEN(RBB)